UNITED STATES OF AMERICA

v.

Ahmed Abdel **SATTAR,** a/k/a "Abu Omar," a/k/a "Dr. Ahmed," **Lynne Stewart, and Mohammed Yousry,** Defendants.

No. S1 02 CR.395 (JGK).

United States District Court, S.D. New York.

Nov. 21, 2006.

Barry M. Fallick, Rochman Platzer Fallick & Rosmarin, New York, NY, Kenneth Alan Paul, Steven P. Ragland, The Tigar Law Firm, Annapolis, MD, Robin L. Baker, U.S. Attorney's Office, New York, NY, for Ahmed Sattar.

Daniel Habib, Gerald J. Niewoehner, Steven P. Ragland, Tigar Law Firm, Annapolis, MD, Jill R. Shellow-Lavine, Law Offices of Jill R. Shellow-Lavine, Southport, CT, Lynne F. Stewart, New York, NY, for Lynne Stewart.

David M Stern, Rothwell, Figg, Ernst & Manbeck, Washington, DC, for Mohammed Yousry.

Christopher Jude Morvillo, Robin L. Baker, U.S. Attorney's Office, SDNY (ST ANDW'S), New York, NY, Joseph F. Bianco, Assistant United States Attorney, Mary Jo White, United States Attorney Criminal Div., New York, NY, for U.S.

## OPINION AND ORDER

KOELTL, District Judge.

In a letter dated October 20, 2006, WNBC reporter Jonathan Dienst requested immediate access to various sealed documents related to the sentencing of the defendants in this case. After receiving Mr. Dienst's letter on October 23, the Court issued an order, dated October 26, 2006 ("10/26/06 Order"), which explained that few documents submitted to the Court by the parties had been submitted under seal although some submissions had not yet been filed, and that the vast bulk of the sentencing submissions had already been publicly filed. The Court indicated that some documents that had been submitted to the Court but not yet filed should be filed, that a small number of documents that raised specific reasons for sealing should remain under seal, and that the parties submit objections or comments to the proposed disposition by October 31. Only defendant Stewart responded. Defendant Stewart, in a letter from counsel dated November 1, 2006, identified four documents that she contended should remain under seal. On November 2, 2006, the Court ordered that the documents indicated in the 10/26/06 Order be filed, with the exception of the four documents identified by Stewart,[1] for which the Court requested the Government's position.[2]

Among these four documents is a July 5, 2006 letter from defendant Stewart's counsel Joshua L. Dratel, Esq. transmitting a psychiatric report that was prepared by Stephen S. Teich, M.D., concerning defendant Stewart. The Government contends that the letter from Mr. Dratel together with the first twelve pages and the beginning of the thirteenth page of the report should be unsealed based on the common law right of access to judicial documents. The Government contends that the remaining three documents, which consist of

1. There were several additional brief documents or portions of documents that the Court had ordered remain under seal for specific compelling reasons, as indicated in the 10/26/06 Order, which none of the parties have disputed should remain under seal and which are not at issue in the present Order.

2. At present, the great bulk of the documents submitted by counsel for the defendants and counsel for the Government in connection with sentencing have been filed in the open docket of the Court, including two volumes of exhibits submitted by defendant Stewart. Those volumes include over four hundred and forty letters and other exhibits. Other public submissions included a sentencing memorandum, an affirmation, and a reply memorandum by defendant Stewart with additional letters and submissions and a sentencing memorandum by the Government. There were also extensive sentencing submissions on behalf of defendants Sattar and Yousry, which had been submitted to the Court and which the Court directed be publicly filed.

various letters from Stewart's counsel, should remain under seal because they do not affect the sentence but relate to other matters, including scheduling, submissions, and seating, and raise substantial privacy concerns.

Defendant Stewart concedes that portions of Mr. Dratel's letter and Dr. Teich's report can be unsealed, primarily to the extent that they have already been publicly disclosed in her sentencing submissions. However, she resists further disclosure. Defendant Stewart would redact about two thirds of what the Government contends should be disclosed, based on her contention that her disclosures to Dr. Teich were made in confidence, with the expectation that they would be treated confidentially in connection with the sentencing process. Moreover, she contends that her expectations of privacy are sufficient to support the continued filing of her proposed redacted portions of the report under seal. Defendant Stewart agrees with the Government that the remaining three letters should remain under seal.

## I.

■ The public has a qualified right of access to judicial proceedings and documents, under both the common law and the First Amendment. *Nixon v. Warner Communications*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (common-law right of access to judicial documents); *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*"Press Enterprise II"*) (First Amendment right of access to preliminary hearings). The Court of Appeals for the Second Circuit has recognized both of these rights with respect to judicial documents. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–26 (2d Cir. 2006) (common-law and First Amendment right of access to documents submitted to

the court in support of and in opposition to a pending motion for summary judgment); *United States v. Graham*, 257 F.3d 143, 149 (2d Cir.2001) (common-law right of access to judicial documents); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.1995) (*"Amodeo I"*) (same); *In re New York Times*, 828 F.2d 110, 113–16 (2d Cir. 1987) (First Amendment right of access to judicial documents), *opinion after remand*, 834 F.2d 1152 (2d Cir.1987) (per curiam).

■ The common-law right of access to judicial proceedings and documents creates a presumption in favor of public access to, and against sealing of, judicial documents. *United States v. Amodeo*, 71 F.3d 1044, 1047 (2d Cir.1995) (*"Amodeo II"*). A court must undertake a three-part inquiry to determine whether there is a common-law right of access to a document submitted to the court. First, a court must determine whether the document is a "judicial document," such that a presumption of access attaches. Second, if the document is indeed a "judicial document," the court must determine the weight to be accorded the presumption of access. Finally, after determining the weight of the presumption of access, the court must balance any countervailing factors against the presumption. *Id.* at 1050–51.

■ The Supreme Court has also recognized a presumptive right of access to judicial proceedings and documents under the First Amendment. Determination of this right involves an inquiry referred to as the "experience and logic" test. *Press–Enterprise II*, 478 U.S. at 8–9, 106 S.Ct. 2735. A second approach relating to judicial documents considers the extent to which judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings. *Lugosch*, 435 F.3d at 120. The "experience" prong requires a court to determine

"whether the place and process have historically been open to the press and the general public," and the "logic" component requires the court to ascertain "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 8, 106 S.Ct. 2735. The Second Circuit Court of Appeals has relied on the "experience and logic" test to determine that the public and the press have a qualified First Amendment right of access to certain criminal proceedings, *e.g., United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir.2005) (sentencing proceedings); *ABC, Inc. v. Stewart*, 360 F.3d 90, 99–100 (2d Cir.2004) (pretrial *voir dire*); *In re The Herald Co.*, 734 F.2d 93, 99 (2d Cir.1984) (pretrial suppression hearings), and to judicial documents, *e.g., Lugosch*, 435 F.3d at 124 (documents submitted in support of and in opposition to a motion for summary judgment); *United States v. Haller*, 837 F.2d 84, 86–87 (2d Cir.1988) (plea proceedings and plea agreements); *In re New York Times*, 828 F.2d at 114 (papers in connection with suppression motion). If the "experience and logic" test is satisfied, there is a presumption of access, which can be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. 2735.

## II.

### A.

With respect to the letter from Mr. Dratel and the accompanying report from Dr. Teich, it is clear that the documents are "judicial documents" to which a common law presumption of access attaches. To be designated as a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process ..." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo I*, 44 F.3d at 145). These documents were submitted to the Court to provide information with respect to the crucial judicial function of sentencing. The Court did not find the submissions to be useful and did not rely on them. The Court set forth at sentencing the reasons for the sentence and did not refer at all to the letter from Mr. Dratel or the report by Dr. Teich. However, the Court of Appeals for the Second Circuit recently held, in the context of documents submitted in support of and in opposition to a motion for summary judgment, before the motion was even decided, that it did not make a difference to the classification of a document as a judicial document that the document was not actually relied upon by the court. *See Lugosch*, 435 F.3d at 122–23, 126. It is sufficient that the document was submitted to the Court for purposes of seeking or opposing an adjudication. *See id.*

The second step of the inquiry is to determine the weight to be given to the presumption of access. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049. Some documents "directly affect an adjudication" and play a significant role in "determining litigants' substantive rights"; these are entitled to the strongest presumption of public access. *Id.; see Joy v. North*, 692 F.2d 880, 894 (2d Cir.1982) (report submitted to court as principal basis for summary judgment motion entitled to strong presumption of access). Other documents "play only a negligible role in the performance of Article III duties," such as documents passed between parties in discovery, and thus are entitled to a

"presumption [that] is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d at 1050.

 Most recently in the *Lugosch* case, the Court of Appeals made clear that the weight of the presumption is not affected by the fact that the Court may not have relied upon the document submitted or found the document useful. The presumption of access is entitled to great weight if a party submits the document to the court for purposes of adjudication. *Lugosch*, 435 F.3d at 123. As the Court of Appeals explained, once a document is submitted to the court, the public should be able to assess the correctness of the judge's decision, and "documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." *Id.* (quoting *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Lit.*, 101 F.R.D. 34, 43 (C.D.Cal.1984)). Therefore, according to the Court of Appeals, documents submitted to the Court for purposes of adjudication, should not remain under seal "absent the most compelling reasons." *Id.* (citing *Joy*, 692 F.2d at 893) (emphasis removed). In reaching this conclusion, the Court of Appeals appears to have clarified its prior statement in *Amodeo II* that "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71

F.3d at 1050. After *Lugosch*, it appears that the test focuses not on whether the document was actually used by the court but, rather, on the role the document was intended to play in the exercise of the court's Article III duties. If a party submitted the document as part of the process of adjudication, the presumption of public access accorded the document is entitled to great weight.

 Defendant Stewart points to Judge Block's thorough opinion in *United States v. Gotti*, 322 F.Supp.2d 230 (E.D.N.Y.2004). In that case, Judge Block found that unsolicited letters sent to the court in connection with sentencing were entitled to a common law presumption of access, but that, under *Amodeo II*, the presumption was entitled to little weight because the court did not rely on the letters. *Id.* at 250. In *Gotti*, Judge Block was dealing with unsolicited letters from third parties and not letters submitted by the parties as part of a sentencing submission. In this case, however, the letter and report at issue were not unsolicited letters sent to the Court but rather part of the sentencing submission that the defendant made to support her argument at sentencing. Indeed the conclusion of the report and extensive excerpts from the report were included in the publicly filed sentencing memorandum submitted by the defendant. Under these circumstances, the presumption accorded to the submission is entitled to great weight under *Lugosch*, despite the fact that the Court did not rely upon the submission.[3]

---

**3.** Other cases that have dealt with sentencing letters sent to the court do not undercut a right of access to materials submitted to a sentencing court as part of the defendant's sentencing submission. *See United States v. Boesky*, 674 F.Supp. 1128 (S.D.N.Y.1987); *United States v. Lawrence*, 167 F.Supp.2d 504 (N.D.N.Y.2001); *United States v. Corbitt*, No.

87 Cr. 378, 1988 WL 94278 (N.D.Ill. Aug.24, 1988). In *Boesky*, some 35 letters attached to the defendant's pre-sentence memorandum were all publicly disclosed, and the court declined to disclose only letters submitted directly to the court. *See Boesky*, 674 F.Supp. at 1129. In *Lawrence*, the court similarly found that letters attached to or explicitly

Defendant Stewart also relies on the decision of the Court of Appeals for the Second Circuit that denied access to a pre-sentence report to a third party. *See United States v. Charmer Indus., Inc.*, 711 F.2d 1164 (2d Cir.1983). That decision, however, did not discuss either the public right of access to judicial documents or the First Amendment right of access. More importantly, the decision was based on the particular role of pre-sentence reports in the sentencing process and relied on the fact that the report was prepared by the Probation Service, which acts as an arm of the court, and the fact that preparation and disclosure of the pre-sentence report are regulated in part by Federal Rule of Criminal Procedure 32. The decision did not deal at all with the standards to be applied to a submission by a party to the Court in the sentencing process.

■ Although the letter from Mr. Dratel and the report by Dr. Teich are entitled to a presumption of access that is accorded great weight, the presumption can be overcome by sufficiently compelling countervailing interests. One countervailing interest that has been identified by the Court of Appeals and that is directly at

issue in this case is the privacy interest of the person resisting disclosure. *See Amodeo II*, 71 F.3d at 1051. As the Court of Appeals explained: "Courts have long declined to allow public access simply to cater to a morbid craving for that which is sensational or impure.... [C]ourts have the power to insure that their records are not used to gratify private spite or promote public scandal ..." *Id.* (internal citations and quotation marks omitted). The Court of Appeals has also explained that, in considering the weight to be accorded to an assertion of the right of privacy, a court should consider the "degree to which the subject matter is traditionally considered private rather than public.... [F]amily affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* Furthermore, there is a recognized privacy interest in medical records, although that privacy right is neither fundamental nor absolute. *See Crawford v. Manion*, No. 96 Civ. 1236, 1997 WL 148066, at *1 (S.D.N.Y. Mar.31, 1997); *see also Whalen v. Roe*, 429 U.S. 589, 603–04, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).[4]

referenced in the defendant's sentencing memorandum or other submissions to the court were part of the public record as to which there was public access, but that there was no right of access to letters sent directly to the court. *See Lawrence*, 167 F.Supp.2d at 506–09. In *Corbitt,* the court allowed access to sentencing letters sent to the court by public officials, after redacting certain personal information from several letters. *See Corbitt,* 1988 WL 94278, at *9.

4. Indeed, the privacy interest in medical records has been expressly recognized by the Judicial Conference of the United States ("Judicial Conference"). In March 2004, the Judicial Conference approved a set of guidelines implementing privacy and public access policies for electronic criminal case files, which were prepared by a specially-created subcom-

mittee consisting of members from the Committees on Court Administration and Case Management, Criminal Law and Defender Services. *See* Judicial Conference, *Guidance for Implementation of the Judicial Conference Policy on Privacy and Public Access to Electronic Criminal Case Files* (March 2004), http://www.privacy.uscourts.gov/crimimpl. htm. While the guidelines were drafted to deal with the privacy concerns raised by remote electronic access to criminal records, they also set out cautions that apply to the public filing of any records in a criminal case. Those guidelines outline a model "Notice of Electronic Availability of Criminal Case File Documents," which provides in part:

Because filings will be remotely, electronically available and may contain information implicating not only privacy but also personal security concerns, exercise caution

██ In this case, the Court has carefully reviewed the letter from Mr. Dratel and the report by Dr. Teich. There are several small portions of the first twelve pages of the report and the first five lines on page 13 that concern highly personal family matters relating to defendant Stewart as to which there is a sufficient privacy interest, well-recognized by the Court of Appeals, that is sufficiently compelling to warrant redaction. The Court has indicated those redactions in a copy of the letter and report that is being filed under seal. There is no reason to believe that the details of these highly-personal family matters have otherwise been disclosed, and the disclosure of these matters would not promote any of the values associated with public scrutiny of the sentencing process.

Similarly, the report by Dr. Teich beginning with "Additional History" on page 13 concerns a description of the details of defendant Stewart's personal life. It is not directly related to the opinions given by Dr. Teich and includes highly personal details of defendant Stewart's history and family life. As with the redactions in the first twelve pages, the interests of personal privacy in that history are sufficiently compelling to overcome the presumption of access. Both the Government and defendant Stewart agree that these pages should be redacted.

The bulk of the redactions that defendant Stewart would make in the first twelve plus pages of Dr. Teich's report, but which the Court finds should be disclosed, concern the details of defendant Stewart's representation of Sheikh Omar Abdel Rahman and her reactions to that representation, her conduct in connection with the crimes at issue in the current case, and her prior representation of Dominic Maldonado. However, defendant Stewart has conceded that some portions of the sections dealing with these issues should be disclosed, apparently because she already disclosed them in her publicly filed sentencing memorandum.

██ Nonetheless, the remainder of the discussions with respect to these issues should also be disclosed. They relate to public issues rather than private matters, and having publicly discussed part of the subjects and their relevance to Dr. Teich's opinion, defendant Stewart cannot claim a privacy interest that is sufficiently compelling to shield the remainder of the discussion.

Defendant Stewart also attempted to redact the portion of the report dealing with the contempt charge against her. But this was a public rather than a private issue and was also discussed in the public affirmation submitted by her counsel, dated June 30, 2006, at paragraphs 35–39. There is no basis for a selective appeal to privacy on the same subject matter. *See, e.g., Gill v. Gilder*, No. 95 Civ. 7933, 1997 WL 419983, at *3 (S.D.N.Y. July 28, 1997)

when filing a document that contains any of the following information and consider accompanying any such filing with a motion to seal. Until the court has ruled on any motion to seal, no document that is the subject of a motion to seal, nor the motion itself or any response thereto, will be available electronically or in paper form.

1) any personal identifying number, such as driver's license number;
2) *medical records, treatment and diagnosis;*
3) employment history;
4) individual financial information;
5) proprietary or trade secret information;
6) information regarding an individual's cooperation with the government;
7) information regarding the victim of any criminal activity;
8) national security information; and
9) sensitive security information as described in 49 U.S.C. § 114(s).

*Id.* (emphasis added).

("A plaintiff determines the issues brought before the court and cannot then selectively decide what information to reveal and what information to withhold."); *Crawford,* 1997 WL 148066, at *1 (finding that the plaintiff waived his right to privacy in medical records by placing his medical history in issue).

Defendant Stewart also defends her redactions on the grounds that they deal with matters that she conveyed in confidence to Dr. Teich. However, Dr. Teich's report indicated that he told defendant Stewart that he was conducting the interviews for her attorney in connection with sentencing, that he would be making a report to her attorney, and that he might be called to testify. Under these circumstances—where the report was submitted to the Court and Dr. Teich was available to testify about his opinion and the basis for it—defendant Stewart cannot rely on any confidentiality in addition to the protection otherwise afforded to matters of personal privacy, where that privacy is sufficiently compelling to overcome the presumption of access.

### B.

█ It is unnecessary to decide whether the First Amendment right of access applies to Mr. Dratel's letter and Dr. Teich's report because, even assuming that the right does apply, the interest in personal privacy for the matters redacted from the report provides a sufficiently compelling interest to overcome that right. The Court has carefully redacted the documents to assure that the redactions are narrowly tailored to redact only the matters as to which there is a sufficiently compelling interest in personal privacy.

In *Gotti,* the court found that there was no First Amendment presumption of access that attached to the unsolicited sentencing letters sent directly to the court because there was "no historic basis for the disclosure of sentencing letters under the 'experience' prong of the 'experience and logic' test, and there is no 'logic' in chilling the free flow of information by publicly disclosing letters sent in confidence to the court." Moreover, according to the court, sentencing letters are not a necessary corollary to attending a sentencing proceeding because they have nothing to do with the ability of the public and the press to attend such proceedings. *Gotti,* 322 F.Supp.2d at 249–50.

For these reasons, both the Government and defendant Stewart doubt that there is a First Amendment right of access to these documents, which were filed under seal in connection with sentencing. As explained above, it is unnecessary to decide that issue in this case because, even if the right does apply, the Court has complied with that right by redacting the documents and disclosing those portions for which there is not a sufficiently compelling interest in personal privacy to overcome any First Amendment right of access. *See United States v. Kaczynski,* 154 F.3d 930, 932 (9th Cir.1998) ("Because the media established a common law right of access, it is unnecessary for us to resolve the media's First Amendment claim.").

### III.

Both the Government and defendant Stewart agree that there is neither a common law right of access nor a First Amendment right of access to the three remaining documents at issue that have been filed under seal. Each of the documents was a brief letter that defendant Stewart's counsel sent to the Court and none of the letters were part of the sentencing submissions to the Court. The letters dealt with administrative matters such as scheduling, submissions and seating. These documents were not submitted

**390**

in connection with the exercise of the judicial function of sentencing. Thus, it is doubtful that these documents are "judicial documents." Even if they were, these documents are so far removed from the exercise of a judicial function that any presumption of access that attaches to them would be entitled to little weight, and any such presumption would be overcome by the privacy and security matters that caused the letters to be submitted under seal. Similarly, neither "experience" nor "logic" warrants public disclosure of these letters; the letters are not a necessary corollary to the right to attend a judicial proceeding; and any First Amendment presumption of access has been overcome by the interests of privacy and security attached to the letters. Each of the letters is brief and there is no reasonable way that they could be redacted.

### CONCLUSION

For the reasons explained above, defendant Stewart should file within five (5) days a copy of Mr. Dratel's letter and Dr. Teich's report with the redactions indicated in the documents that the Court is providing to counsel and filing under seal. Defendant Stewart should also file at that time her proposed redacted copy of Mr. Dratel's letter and Dr. Teich's report.

**SO ORDERED.**