Opinion by Judge OWENS; Concurrence by Judge SESSIONS; Dissent by Judge IKUTA.
OPINION
OWENS, Circuit Judge:
The Center for Auto Safety (CAS) appeals from the district court’s order denying CAS’s motions to intervene and unseal documents filed in a putative class action lawsuit between Chrysler Group, LLC (Chrysler) and certain named plaintiffs. Because the district court applied the incorrect standard when evaluating the mo *1095 tion to unseal these documents, we vacate and remand for further proceedings.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
In 2013, plaintiffs filed a putative class action alleging defects in a part found in certain Chrysler vehicles.[1] As part of the discovery process, the parties entered into a stipulated protective order. The protective order permitted each party to designate certain documents as “confidential,” and required any party that later wished to attach a “confidential” document to a court pleading to apply to do so under seal.
In 2014, plaintiffs moved for a preliminary injunction to require Chrysler to notify the proposed class of the alleged risks its vehicles presented. Plaintiffs and Chrysler attached “confidential” discovery documents to their memoranda supporting and opposing the motion. Consistent with the stipulated protective order, both parties applied to the district court to file the documents under seal, and the district court granted the motions. The district court eventually denied the motion for preliminary injunction.
Shortly before the district court denied plaintiffs’ motion for preliminary injunction, CAS filed motions to intervene and unseal the “confidential” documents filed to support and oppose the motion for preliminary injunction. CAS argued that only “compelling reasons” could justify keeping these documents under seal, while Chrysler contended that it need only show “good cause” to keep them from the public’s view.
The district court reviewed the relevant Ninth Circuit case law and other district courts’ attempts to apply it to a motion for preliminary injunction. While ordinarily a party must show “compelling reasons” to keep a court document under seal, Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178 (9th Cir.2006), the district court relied on language in our cases which provides that when a party is attempting to keep records attached to a “non-dispositive” motion under seal, it need only show “good cause,” id. at 1180. While recognizing that “[tjhere is little clarity as to what, exactly, constitutes a ‘dispositive’ motion,” and that our circuit has not articulated the difference between a dispositive and nondispositive motion,[2] *1096 the district court decided to read “disposi-tive” to mean that unless the motion could literally lead to the “final determination on some issue,” a party need show only good cause to keep attached documents under seal. That was especially true in this case, the district court believed, as the motion for preliminary injunction here sought “notice of potential problems ... to thousands of purchasers,” and “was not a motion to temporarily grant the relief ultimately sought in [the] underlying suit.” Accordingly, the district court found that the motion for preliminary injunction here was nondispositive, applied the good cause standard to the documents filed under seal, and concluded that good cause existed to keep them from the public’s view.[3]
II. STANDARD OF REVIEW
We review a district court’s decision to unseal court records for an abuse of discretion. Blum v. Merrill Lynch Pierce Fenner & Smith, Inc., 712 F.3d 1349, 1352 (9th Cir.2013). Where “the district court’s decision turns on a legal question, however, its underlying legal determination is subject to de novo review.” San Jose Mercury News, Inc. v. U.S. Dist. Court—N.D. Cal. (San Jose), 187 F.3d 1096, 1100 (9th Cir.1999).
“We have jurisdiction because an order denying a motion to unseal or seal documents is appealable either as a final order under 28 U.S.C. § 1291 or as a collateral order.” Oliner v. Kontrabecki, 745 F.3d 1024, 1025 (9th Cir.2014) (internal quotation marks and citation omitted).
III. ANALYSIS
A. Standard to File Documents Under Seal
“It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.” Nixon v. Warner Commnc’ns, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Following the Supreme Court’s lead, “we start with a strong presumption in favor of access to court records.” Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir.2003). The presumption of access is “based on the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice.” United States v. Amodeo (Amodeo II), 71 F.3d 1044, 1048 (2d Cir.1995); see also Valley Broad. Co. v. U.S. Dist. Court—D. Nev., 798 F.2d 1289, 1294 (9th Cir.1986) (explaining that the presumption of public access “promot[es] the public’s understanding of the judicial process and of significant public events”).
Accordingly, “[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the ‘compelling reasons’ standard.” Kamakana, 447 F.3d at 1178. Under this stringent standard, a court may seal records only when it finds “a compelling reason and articulate[s] the factual basis for its ruling, without relying *1097 on hypothesis or conjecture.” Id. at 1179. The court must then “conscientiously bal-ancee ] the competing interests of the public and the party who seeks to keep certain judicial records secret.” Id. (quoting Foltz, 331 F.3d at 1135) (alteration in original) (internal quotation marks omitted). What constitutes a “compelling reason” is “best left to the sound discretion of the trial court.” Nixon, 435 U.S. at 599, 98 S.Ct. 1306. Examples include when a court record might be used to “gratify private spite or promote public scandal,” to circulate “libelous” statements, or “as sources of business information that might harm a litigant’s competitive standing.” Id. at 598-99, 98 S.Ct. 1306.
Despite this strong preference for public access, we have “carved out an exception,” Foltz, 331 F.3d at 1135, for sealed-materials attached to a discovery, motion unrelated to .the merits of a case, see Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1213-14 (9th Cir.2002). Under this exception, a party need only satisfy the less exacting “good cause” standard. Foltz, 331 F.3d at 1135. The “good cause” language comes from Rule 26(c)(1), which governs the issuance of protective orders in the discovery process: “The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... ” Fed.R.Civ.P. 26(c). “Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders,” and thereby undermine Rule 26(c). Phillips, 307 F.3d at 1213; see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (explaining that discovery is .largely “conducted in private as a matter of modern practice,” so the public is not presumed to have a right of access to it); Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir.1986) (“There is no tradition of public access to discovery, and requiring a trial court to . scrutinize carefully public claims of access would be incongruous with the goals of the discovery process.”).
When deciding what test to apply to a motion to unseal a particular court filing— the presumptive “compelling reasons” standard or the “good cause” exception— we have sometimes deployed the terms “dispositive” and “non-dispositive.” For example, in Phillips, the Los Angeles Times moved to unseal confidential settlement information that General Motors produced in discovery under a protective order and was subsequently attached to a discovery sanctions motion. 307 F.3d at 1208-10. The district court granted the motion to unseal. Id. at 1208-09. In reversing that decision, we stressed the special role that protective orders play, that “[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action,” and reasoned that it made “little sense to render the district court’s protective order useless simply because the plaintiffs attached a sealed discovery document to a nondisposi-tive sanctions motion filed with the court.” Id. at 1212-13 (quoting in part Seattle Times Co., 467 U.S. at 33, 104 S.Ct. 2199); see also Kamakana, 447 F.3d at 1179-80 (explaining that the sealed records in Phillips were “not directly relevant to the merits of the case”). Applying the good cause standard from Rule 26(c) as an exception for discovery-related motions makes sense, as the private interests of litigants are “the only weights on the scale.” Kamakana, 447 F.3d at 1180.
In Foltz, we again discussed “disposi-tive” and “nondispositive” motions. We *1098 recognized that “[t]here are good reasons to distinguish between dispositive and non-dispositive motions,” as while discovery-related motions are often unrelated to the merits of a case, “[t]he same cannot be said for materials attached to a summary judgment motion because ‘summary judgment adjudicates substantive rights and serves as a substitute for trial.’ ” 331 F.3d at 1135-36 (quoting Rushford v. New Yorker Magazine, 846 F.2d 249, 252 (4th Cir.1988)). Accordingly, we applied the “compelling reasons” standard to documents attached to a motion for summary judgment. Id.; see also Kamakana, 447 F.3d at 1178-80 (reviewing Phillips and Foltz).
Like the district court, Chrysler urges us to read our case law to limit the “compelling reasons” test to only those eases in which the motion at issue is literally dis-positive, meaning that it “bring[s] about a final determination.” Black’s Law Dictionary 540 (10th ed.2014). This would include motions to dismiss, for summary judgment, and judgment on the pleadings, but would not include other motions that go to the heart of a case, such as a motion for preliminary injunction or a motion in limine. In other words, the public would not be presumed to have regular access to much (if not most) of the litigation in federal court, as that litigation rarely falls into the narrow category of “dispositive.”
Although the apparent simplicity of the district court’s binary approach is appealing, we do not read our case law to support such a limited reading of public access.[4] Most litigation in a case is not literally “dispositive,” but nevertheless involves important issues and information to which our case law demands the public should have access. To only apply the compelling reasons test to the narrow category of “dispositive motions” goes against the long held interest “in ensuring the public’s understanding of the judicial process and of significant public events.” Kamakana, 447 F.3d at 1179 (quoting Valley Broad. Co., 798 F.2d at 1295) (internal quotation marks omitted). Such a reading also contradicts our precedent, which presumes that the “ ‘compelling reasons’ standard applies to most judicial records.” Pintos v. Pac. Creditors Ass’n, 605 F.3d 665, 677-78 (9th Cir.2009) (emphasis added).
When using the words “dispositive” and “nondispositive,” we do not believe our court intended for these descriptions to morph into mechanical classifications. Rather, these descriptive terms are indicative of when a certain test should apply. For example, in Kamakana, we wrote that there is a “good reason[ ]” why the public interest in accessing nondispositive motions is not as strong as dispositive motions: because nondispositive motions “are often ‘unrelated, or only tangentially related, to the underlying cause of action.’ ” 447 F.3d at 1179 (emphasis added) (quoting Seattle Times Co., 467 U.S. at 33, 104 S.Ct. 2199). This statement implicitly acknowledges that nondispositive motions are not always unrelated to the underlying cause of action. The nondispositive discovery motion in Phillips was unlikely t’o be related to the merits, while the motions for summary judgment in Foltz and Kamakana obviously were. Nothing in Phillips (or any other case cited by Chrysler or the dissent) contemplates that the right of public access would be limited solely to literally dispositive motions, as none of those cases address the situation in which a nondispositive motion may be directly related to the merits of the case and where the “good reason” identified for treating *1099 nondispositive motions differently no longer applies.
The focus in all of our cases is on whether the motion at issue is more than tangentially related to the underlying cause of action. See Phillips, 307 F.3d at 1212-13; Foltz, 331 F.3d at 1134-36; Kamakana, 447 F.3d at 1179; Pintos, 605 F.3d at 678; Oliner, 745 F.3d at 1026. It is true that nondispositive motions are sometimes not related, or only tangentially related, to the merits of a case, as in Phillips. But plenty of technically nondispositive motions— including routine motions in limine — are strongly correlative to the merits of a case.[5]
Particularly relevant here, a motion for preliminary injunction frequently requires the court to address the merits of a case, which often includes the presentation of substantial evidence. Stormans v. Selecky, 586 F.3d 1109, 1127 (9th Cir.2009). A motion for preliminary injunction may even, as a practical matter, determine the outcome of a case. See, e.g., Miller v. Rich, 845 F.2d 190, 191 (9th Cir.1988) (explaining how “in this case, the denial of the preliminary injunction effectively decided the merits of the case” (citation omitted)). In fact, because motions for preliminary injunctions are so significant, they are one of the few categories of motions that may be heard as interlocutory appeals. See id.; see also 28 U.S.C. § 1292. In certain circumstances, an appellate court may even choose to decide the merits of the case on an appeal from a motion for preliminary injunction as to the applicable rule of law. Thornburgh v. Am. Coll. of Obstetricians & Gynecologists, 476 U.S. 747, 756-57, 106 5.Ct. 2169, 90 L.Ed.2d 779 (1986) (overruled in part on other grounds by Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)); Gorbach v. Reno, 219 F.3d 1087, 1091 (9th Cir.2000) (en banc). For the purposes of this opinion, however, we assume that the instant motion for preliminary injunction was technically nondisposi-tive.[6]
Under Chrysler’s view, the strong presumption of public access does not apply to any of the prior examples, but it would apply to a motion for summary judgment, which may contain the exact same materials. A motion for discovery sanctions that requests dismissal as a remedy would be “dispositive” under Chrysler’s test, while the same motion attaching the same documents — but seeking a remedy just shy of dismissal — would be “nondispositive.” Neither our case law nor the strong principles of public access to the courts supports such incongruity.
Nor does the case law of other circuits, which rejects a mechanistic rule to determine when the presumption -of public access applies. In the Second Circuit, for example, the weight given to the presumption of access is “governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.” Amodeo II, 71 F.3d at 1049. Documents submitted to the court exist on a “continuum,” spanning those that play a role in “determining litigants’ substantive rights,” which are afforded “strong weight,” to those that play only a “negligible role in performance of *1100 Article III duties ... such as those passed between the parties in discovery,” which lie “beyond the presumption’s reach.” Id. at 1049-50. Similarly, in the First Circuit, the public has a right of access to “materials on which a court relies in determining the litigants’ substantive rights” which are “distinguished from those that relate[] merely to the judge’s role in management of the trial and therefore play no role in the adjudication process.” United States v. Kravetz, 706 F.3d 47, 54 (1st Cir.2013) (citations omitted) (alterations in original).
The Third and Eleventh Circuits directly reject a literal divide between dis-positive and nondispositive motions. According to the Third Circuit, “there is a presumptive right of access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.... We see no reason to distinguish between material submitted in connection with a motion for summary judgment and material submitted in connection with a motion for preliminary injunction.... ” Leucadia, Inc. v. Applied Extrusion Tech., Inc., 998 F.2d 157, 164 (3d Cir.1993). The rationale is that the presumption should apply to any motion related to a “matter[ ] which the public has a right to know about and evaluate.” Id. (alteration in original) (citation omitted). Similarly, in the Eleventh Circuit, material filed in connection with any “substantive pretrial motion, unrelated to discovery, is subject to the common law right of access,” “whether or not characterized as dispositive.” Romero v. Drummond Co., 480 F.3d 1234, 1245-46 (11th Cir.2007) (citing Amodeo II, 71 F.3d at 1050).
Given that preliminary injunctions are “extraordinary and drastic” remedies, Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir.2012), they may certainly affect litigants’ “substantive rights,” see Kravetz, 706 F.3d at 54, Amodeo II, 71 F.3d at 1049. They also invoke important “Article III” powers, Amodeo II, 71 F.3d at 1049, so much so that magistrate judges may not even rule upon them, 28 U.S.C. § 636(b)(1)(A). A bright line rule that does not afford a presumption of access to a motion for preliminary injunction because it is “nondispositive” conflicts with the Third and Eleventh Circuits and is, at best, in tension with the First and Second Circuits.
In re Midland National Life Insurance Company Annuity Sales Practices Litigation, 686 F.3d 1115 (9th Cir.2012), illustrates that our circuit looks past the literal dispositive/nondispositive label. In that case, an intervenor moved to unseal documents attached to a Daubert motion. Id. at 1118. The district court, like the district court here, concluded that the documents should remain under seal because “the Daubert motion was non-dispositive,” as it “would not have been a determination on the merits of any claim or defense.” Id. at 1119. We rejected the district court’s focus on whether the motion was literally “dispositive”: “That the records are connected to a Daubert motion does not, on its own, conclusively resolve the issue.” Id. As the motion, in effect, “pertain[ed] to central issues bearing on defendant’s summary judgment motion,” we treated that motion as dispositive. Id. We did not allow the technically nondispositive nature of the Daubert motion to cloud the reality that it was able to significantly affect the disposition of the issues in the case. See also Oliner, 745 F.3d at 1025-26 (applying “compelling reasons” test to motion to seal entire court record of an appeal from the bankruptcy court, even though motion did not result in a final determination on the merits).
Case law is also replete with examples of motions for preliminary injunc *1101 tions that reflect the need for the public right of access — to “provide the public with a more complete understanding of the judicial system and a better perception of its fairness.” Leucadia, 998 F.2d at 161 (quoting Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 658, 660 (3d Cir.1991)). Motions for preliminary injunctions have been utilized to: test the boundaries of equal protection; police the separation of powers in times of domestic and global instability; protect “one of our most valuable rights,” the right to retain United States citizenship; and even determine life or death.[7] “People in an open society do not demand infallibility from their institutions” with respect to such issues, “but it is difficult for them to accept what they are prohibited from observing.” Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In light of the strong presumption, these impactful motions should not be categorically shielded from the public right of access.
Consistent with our precedent, we make clear that public access to filed motions and their attachments does not merely depend on whether the motion is technically “dispositive.”[8] Rather, public access will turn on whether the motion is more than tangentially related to the merits of a case. While many technically nondisposi-tive motions will fail this test, some will pass. Our reading of the public access cases is consistent with our own case law, and more importantly, comports with the old tradition of ensuring public access which “antedates the Constitution and ... is now beyond dispute.” Leucadia, 998 F.2d at 161 (internal quotation marks and citation omitted).
The dissent’s doomsday depiction of our opinion, in which we purportedly “eviscerate! ] Rule 26(c) and its benefits,” Dissent at 1108, not only ignores the real world intersection of Rule 26(c) and the right to public access, but also the clear language from our previous decisions. As the dissent does not dispute, its reading of Rule 26(c) in this context conflicts with virtually every other circuit to review this issue. *1102 The district courts in those circuits routinely apply a more nuanced test, and none has complained of staring at “an ink blot.” Dissent at 1108. We have full confidence that judges in our circuit are equally capable. The dissent’s convenient chessboard sweep of the experiences of our sister circuits — responding only by calling them “irrelevant” in a footnote' — illustrates its shaky foundation. Dissent at 1106, n. 2. And more importantly, the dissent’s indignation that we read certain language in our opinions as descriptive, rather than definitive, ignores that it does the same thing — it chooses to interpret the dispo-sitve/nondispositive language as “a bright line rule,” while painting the “more than tangentially related to the merits of a case” phrase as “reasoning we used to justify the adoption of a bright line rule.” Dissent at 1105. Yet the dissent is the only opinion from any appellate court to read our caselaw in such stark terms. We choose to follow language in our case law that makes sense and is consistent with our fellow circuits.
B. The Instant Motion for Preliminary Injunction
Applying our circuit’s case law, we conclude that plaintiffs’ motion for preliminary injunction is more than tangentially related to the merits. In the complaint, plaintiffs were seeking, in addition to damages, injunctive relief, including an order “requiring Chrysler to adequately disclose and repair the [vehicle] defect.” In the preliminary injunction motion, plaintiffs requested that Chrysler notify its customers that there was a part in their vehicle which could require replacement and be dangerous if it failed. As Chrysler argued in its opposition to the preliminary injunction, once notice is given, it “alters the status quo and cannot be undone.” If plaintiffs had succeeded in their motion for preliminary injunction, they would have won a portion of the injunctive relief they requested in the underlying complaint, and that portion of their claims would have been resolved.
Chrysler’s counterarguments are unavailing. First, Chrysler contends that because this motion for preliminary injunction was denied, the court should not apply the presumption of public access. But the common law right of access promotes the “public interest in understanding” the judicial process itself, Foltz, 331 F.3d at 1135 (quoting Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir.1995)), and the “bases or explanations for a court’s decision,” Oliner, 745 F.3d at 1025 (citation omitted). Nothing in our precedent suggests that the right of access turns on any particular result. In fact, in Kamakana, our circuit applied the presumption of public access to a summary judgment motion that was “denied, in large part.” 447 F.3d at 1176; see also Leucadia, 998 F.2d at 164 (citing Westinghouse, 949 F.2d at 661) (explaining that papers filed in connection with a motion “are not entitled to be shielded from public access merely because the district court denied the motion rather than granted it”).
Chrysler also argues that expanding the compelling reasons standard makes it easier for “litigants to override protective orders.” As a result, litigants will file more “meritless motions.” This argument is similarly unconvincing. District courts can use Rule 11 to impose sanctions on any party that files a motion for an “improper purpose” or who does so without a legal or factual basis. Fed.R.Civ.P. 11(b)-(c).
As the preliminary injunction motion here was more than tangentially related to the merits of the case, we vacate and remand for the district court to consider the documents under the compelling reasons standard.
*1103 IV. CONCLUSION
While simplicity has its virtues, it also has its vices. Here, permitting the public’s right of access to turn on what relief a pleading seeks — rather than on the relevance of the pleading — elevates form too far beyond substance and over reads language in our case law. Our precedent, which always has focused on whether the pleading is more than tangentially related to the merits, recognizes this essential point. To hold otherwise would permit the discovery “exception” to swallow the public access rule. Due to the strong presumption for public access and the nature of the instant motion for a preliminary injunction, Chrysler must demonstrate compelling reasons to keep the documents under seal.
VACATED AND REMANDED.
Chrysler shall bear costs on appeal.

. We express no opinion on the merits of the underlying lawsuit, including whether the part in question was defective.

. District courts have understandably struggled with our use of the term “dispositive” in these circumstances. Many courts have applied the compelling reasons standard to motions for preliminary injunctions or temporary restraining orders. See United Tactical Sys., LLC v. Real Action Paintball, Inc., 2015 WL 295584, at *2 (N.D.Cal. Jan. 21, 2015); Gamez v. Gonzalez, 2013 WL 127648, at *2 (E.D. Cal. Jan. 9, 2013); Melaleuca Inc. v. Bartholomew, 2012 WL 5931690, at *2 (D.Idaho Nov. 27, 2012); FTC v. AMG Servs., Inc., 2012 WL 3562027, at *2 (D.Nev. Aug. 15, 2012); Apple, Inc. v. Samsung Elecs. Co., 2012 WL 2936432, at *3 (N.D.Cal. July 18, 2012); Selling Source, LLC v. Red River Ventures, LLC, 2011 WL 1630338, at *4-5 (D.Nev. Apr. 29, 2011); B2B CFO Partners, LLC v. Kaufman, 2010 WL 2104257, at *1 (D.Ariz. May 25, 2010); Dish Network LLC v. Sonicview USA, Inc., 2009 WL 2224596, at *6 (S.D.Cal. July 23, 2009); Yountville Investors, LLC v. Bank of Am., 2009 WL 411089, at *2 (W.D.Wash. Feb. 17, 2009).
Others, like the district court here, Velasco v. Chrysler Grp., LLC, 2014 WL 7404590, at *6 (C.D.Cal. Dec. 30, 2014), have applied the good cause standard. See Hanginout, Inc. v. Google, Inc., 2014 WL 1234499, at *1 (S.D.Cal. Mar. 24, 2014); In re Nat’l Sec. Telecomm. Records Litig., 2007 WL 549854, at *3-4 (N.D.Cal. Feb. 20, 2007); Reilly v. MediaNews Grp. Inc., 2007 WL 196682, at *1-2 (N.D.Cal. Jan. 24, 2007).
The dissent argues that our decision is unfair to Chrysler, as Chrysler should have been able to "confidently rely on the district court's *1096 protective order” to shield these documents from public scrutiny. Dissent at 1109. The sharp disagreement in our district courts about the application of our precedent to motions for preliminary injunction suggests that the result here is neither unfair nor unexpected.

. Because we are vacating the order denying the motion to unseal the documents and remanding this case so the district court can apply the "compelling reasons” standard, we also vacate the district court's order denying the motion to intervene, and remand this question to the district court to examine anew.

. Moreover, as previously noted, district courts have sometimes struggled with this binary approach, and therefore it is not as simple as it first appears. See supra note 2.

. For example, a motion in limine to admit statements in furtherance of a conspiracy under Federal Rule of Evidence 801(d)(2)(E) will often spell out the very conspiracy alleged in a civil RICO complaint. See Kaley v. United States, - U.S. -, 134 S.Ct. 1090, 1111-12, 188 L.Ed.2d 46 (2014) (Roberts, C.J., dissenting).

. We do not decide whether a motion for preliminary injunction is always “nondisposi-tive.”

. Coalition for Econ. Equity v. Wilson, 122 F.3d 692, 715 (9th Cir.1997) (vacating grant of motion for preliminary injunction and sustaining constitutionality of California's anti-affirmative action initiative, Proposition 209); Monterey Mech. Co. v. Wilson, 125 F.3d 702, 714-15 (9th Cir.1997) (holding, on appeal from motion for preliminary injunction, that state program setting goals for ethnic and sex characteristics of construction subcontractors violates the equal protection clause); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 584-85, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (making a "final determination of the constitutional validity of the President’s order” on an appeal from a motion for preliminary injunction restraining the Secretary of Commerce from seizing the nation's steel mills); Reno, 219 F.3d at 1091, 1098-99 (holding on appeal from a motion for preliminary injunction that the INS may not revoke a person's citizenship administratively); Lopez, 680 F.3d at 1074, 1078 (allowing an execution to proceed on appeal of denial of motion for preliminary injunction over an Eighth Amendment challenge).

. Our circuit already considers motions for preliminary injunctions "dispositive” in the context of magistrate jurisdiction. A magistrate judge may "hear and determine any pretrial matter pending before the court except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.” ' 28 U.S.C. § 636(b)(1)(A) (emphasis added). Those "matters listed in 28 U.S.C. § 636(b)(1)(A) are dispositive while, in general, other matters are non-dispositive.” Flam v. Flam, 788 F.3d 1043, 1046 (9th Cir.2015) (emphasis in original).