**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 17-10424 |
| SHAWNDALE BOYD, *Intervenor*, | D.C. No. 4:14-cr-00168-YGR-2 |
| v. | |
| DAMION SLEUGH, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted March 15, 2018
San Francisco, California

Filed July 23, 2018

Before: J. Clifford Wallace and Marsha S. Berzon, Circuit
Judges, and Terrence Berg,[*] District Judge.

Opinion by Judge Berg

---

[*] The Honorable Terrence Berg, United States District Judge for the
Eastern District of Michigan, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's affirmance of a magistrate judge's order denying Damion Sleugh's motion to unseal codefendant Shawndale Boyd's applications to issue subpoenas pursuant to Fed. R. Crim. P. 17(c).

The panel held that there is no presumption of public access under the First Amendment or common law that attaches to Rule 17(c) subpoena applications and their supporting materials; and that parties can only justify accessing sealed or in camera Rule 17(c) subpoenas, subpoena applications, and supporting documents by demonstrating a "special need."

The panel held that Sleugh failed to demonstrate a "special need" for Boyd's Rule 17(c) subpoena materials, and that there is a continuing need to seal them.

### COUNSEL

Ethan A. Balogh (argued) and Dejan M. Gantar, Coleman & Balogh LLP, San Francisco, California, for Defendant-Appellant.

Ellen V. Leonida (argued) and Todd M. Borden, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Defender; Office of the Federal Public Defender, San Francisco, California; for Intervenor.

Merry Jean Chan (argued), Assistant United States Attorney; J. Douglas Wilson, Chief, Appellate Division; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

BERG, District Judge:

Criminal defendants sometimes seek to obtain evidence by filing applications asking the court to issue subpoenas for the production of documents or witnesses pursuant to Federal Rule of Criminal Procedure 17(c). These applications, supported by an attorney's affidavit explaining the reasons the evidence is necessary, are often filed ex parte and under seal. The issue on appeal in this case—a question of first impression for this Circuit—is whether one defendant in a criminal case can get access to the Rule 17(c) subpoena applications and supporting documents that were filed under seal by another defendant's attorney in the same criminal case, either because of the presumptive right of public access to court records or upon a showing of special need. In view of the circumstances presented here, the district court properly denied the request for disclosure, and we affirm.

## I. THE PARTIES, TRIAL, AND SLEUGH'S APPEAL

In March 2014, Damion Sleugh and Shawndale Boyd were indicted together on charges of (1) conspiring to distribute or to possess with intent to distribute marijuana, and (2) attempted possession with intent to distribute marijuana, each in violation of 21 U.S.C. §§ 846, 841(a)(1)

& (b)(1)(D); (3) robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a); (4) using or carrying a firearm during or in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (5) using a firearm during a drug trafficking crime and causing a murder, in violation of 18 U.S.C. § 924(j). Sleugh was also charged as being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The charges arose from a five-pound marijuana drug deal that Sleugh and Boyd arranged, which ended in the death of the man who was delivering the marijuana, Vincent Muzac.

While awaiting trial, Boyd filed ex parte applications with the court seeking several Rule 17(c) subpoenas. Boyd requested that these applications be filed under seal. The subpoenas sought records relating to multiple cell phone numbers from various service providers for the time period surrounding the date of the alleged crimes, along with some surveillance video from other sources. To support the Rule 17(c) subpoena applications, and as required by local rule, Boyd's defense attorney submitted affidavits describing the need for the records.[1] Those affidavits were also filed ex parte and under seal.

On May 5, 2015, Boyd pleaded guilty to all counts except the murder charge. He agreed to cooperate with the

---

[1] Sleugh has moved to include the Rule 17(c) subpoenas themselves, describing the kinds of records sought, as part of the public record of this appeal. Boyd and the Government did not object to this unsealing request. (Sleugh did not seek to disclose the applications and supporting affidavits setting out the reasons why these cell phone records were being sought by Boyd's attorney.) We granted Sleugh's motion and refer to the contents of the Rule 17(c) subpoenas herein. However, the applications for the subpoenas, including Boyd's counsel's affidavits, remain under seal and, thus, at the center of the instant dispute.

government, and he testified against Sleugh at trial. Sleugh also testified.

Evidence was presented at trial that Sleugh and Boyd arranged to purchase five pounds of marijuana from Vincent Muzac—Boyd's friend and co-worker—for $11,000. On the day of the deal, Boyd and Sleugh met at Sleugh's house. They decided to drive separately, Boyd getting a ride from a neighborhood acquaintance known by the nick-name "Q," and Sleugh, carrying the purchase money, driving a white Ford Escape that had been rented by Boyd's mother. They met at a Walmart parking lot, where there was also a Starbucks. Boyd met Muzac at the Starbucks. Video evidence showed Boyd and Muzac leaving the Starbucks together. Once in the parking lot, Boyd walked by himself up to the white Ford Escape where Sleugh was waiting. Boyd spoke to Sleugh for a few seconds. Boyd then walked away and entered "Q's" vehicle. Boyd and Q drove off, leaving the area. Muzac then walked to the Ford Escape where Sleugh was waiting and got inside. Four minutes later, the Ford Escape drove off without Muzac. Muzac's body was later found lying in the parking lot next to only one pound of marijuana, and without the $11,000.

Boyd testified that, after he and Q left the Starbucks parking lot, he tried repeatedly to contact Muzac on his cell phone, with no success. Later that day, Boyd met Sleugh at Sleugh's apartment, and asked Sleugh if everything was okay. Sleugh told Boyd that he and Muzac argued about the quality of the marijuana, that Muzac punched Sleugh in the mouth, and that Sleugh then shot Muzac in the arm. Boyd testified that Sleugh told him that after he shot Muzac, he pushed him out of the car and left.

Muzac ultimately died from his wounds. Boyd testified that he did not become aware that Muzac had died until he

and Sleugh were arrested on February 22, 2014 and charged in California state court with Muzac's murder.**[2]** Sleugh testified to a different version of events. He claimed that Q—the man who drove off with Boyd in another vehicle—shot Muzac.

On July 17, 2015, the jury convicted Sleugh of all charges. Sleugh was sentenced on November 4, 2015 to life in prison. Boyd received a three-year prison sentence. Sleugh appealed his conviction. *See United States v. Damion Sleugh*, No. 15-10547 (9th Cir.). At Sleugh's request, we stayed the briefing schedule of Sleugh's direct appeal while he sought permission from the district court to unseal Boyd's Rule 17(c) subpoena applications.

Sleugh argued to the district court that he needed access to Boyd's Rule 17(c) subpoena applications for his appeal because of the "possibility" that Boyd testified inconsistently with Boyd's counsel's assertions in those applications. Sleugh did not specify any particular portion of Boyd's testimony as problematic, and did not articulate how he thought counsel's assertions in support of obtaining the cell phone and other records were likely to contain any inconsistent or otherwise impeaching statements. Sleugh reasoned that Boyd's shift from defending the case to pleading guilty and testifying for the Government suggested that Boyd either misrepresented facts in the Rule 17(c) subpoena applications, or lied during his testimony. Put differently, Sleugh asserts that Boyd's testimony on behalf of the Government must have been inconsistent with any defense theory Boyd used to support the Rule 17(c) subpoena applications. Standing on that assumption, Sleugh

---

**[2]** When the instant federal charges were brought against Sleugh and Boyd, the state prosecutor dismissed the murder charges.

concluded that he could have used the statements of Boyd's counsel in the Rule 17(c) subpoena applications to cross-examine Boyd at trial. Sleugh also contended that he had a right to access the Rule 17(c) subpoena applications as judicial records. The magistrate judge who originally granted Boyd's Rule 17(c) subpoena applications denied Sleugh's motion to unseal them. The district court affirmed.

When Sleugh appealed the district court's decision denying disclosure, Boyd intervened, arguing that his Rule 17(c) subpoena applications should remain under seal. Sleugh's direct appeal of his conviction remains stayed, pending the instant appeal.

## II. STANDARD OF REVIEW

A district court's denial of a motion to unseal is reviewed for abuse of discretion. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir 2016). As part of that review, this court must first determine under de novo review whether the district court applied the correct legal rule. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If the district court applied the wrong rule, the district court abused its discretion. *Id.* The application of the correct legal standard may nonetheless constitute an abuse of discretion if the application "was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* at 1262 (quotations, citation, and footnote omitted).

## III. ANALYSIS

### a. *No Presumptive Right of Public Access Attaches to Rule 17(c) Subpoena Applications*

A criminal defendant has a constitutional right to compulsory process in building a defense. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (holding that "criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt").

While Rule 16 of the Federal Rules of Criminal Procedure generally governs discovery procedures in criminal cases, Rule 17(c) allows parties to a criminal trial to use the district court's subpoena power to request materials or testimony from witnesses. Fed. R. Crim. P. 17(c)(1). The Supreme Court has made it clear that a party seeking production of materials under a Rule 17(c) subpoena must demonstrate to the court "(1) relevancy; (2) admissibility; [and] (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). If the grounds articulated in support of the subpoena request were made part of the public record, such a showing could reveal counsel's trial strategies or defense theories to the opposing party, here, the government. This concern about revealing defense strategies to the government could also apply to revelations of such confidential theories to co-defendants, who may have adverse interests—the issue implicated in this appeal. Recognizing this potential conundrum, some courts, like the district court here, have local rules that permit defendants to file their Rule 17(c) applications under seal for "good cause." N.D. Cal. Crim. Local Rule 17-2(a)(1).

At the same time, filings under seal can interfere with open, public access to judicial records and documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." (footnotes omitted)). Shrouding the mechanics of a criminal case in secrecy places the public's interest in a transparent judicial system at risk. *See Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*") (observing that open criminal proceedings "enhance both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system"); *see also Phoenix Newspapers, Inc. v. U.S. Dist. Court*, 156 F.3d 940, 946 (9th Cir. 1998) (observing that "[o]ne of the most enduring and exceptional aspects of Anglo-American justice is an open public trial").

Sleugh argues that the district court should have granted him access to Boyd's sealed Rule 17(c) subpoena requests because he has a presumptive right to access them under either the First Amendment or common law. However, "there is no right of access which attaches to all judicial proceedings, even all criminal proceedings." *Phoenix Newspapers, Inc.*, 156 F.3d at 946.

As to the First Amendment, the test to determine "whether a right of access attaches to a particular kind of hearing" is a two-part test "known as the 'experience and logic' test." *Phoenix Newspapers, Inc.*, 156 F.3d at 946. The test also applies to documents generated as part of a judicial proceeding, such as those here. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 n.4 (9th Cir. 1989). "The 'experience' prong of the test questions 'whether the place and process have historically been open to the press and

general public[.]'" *Phoenix Newspapers, Inc.*, 156 F.3d at 946. (quoting *Press-Enter. Co. v. Superior Court,* 478 U.S. 1, 8 (1986) ("*Press Enterprise II*"). The "logic" element "inquires 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* "If a proceeding fulfills both parts of the test, a qualified First Amendment right of access arises, to be overcome 'only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.*

As to the common law, there is "a strong presumption in favor of access to court records." *Ctr. for Auto Safety*, 809 F.3d at 1096. A party seeking to seal a judicial record can overcome this presumption only by showing a "compelling reason." *Id.*

The issue here, then, is whether there is a presumptive right of public access to Rule 17(c) subpoena requests under either the First Amendment or common law. We have not addressed this issue before. The district court and the magistrate judge found guidance in the First Circuit's decision, *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), the only circuit court opinion squarely addressing this issue. Applying the reasoning of *Kravetz*, they held that Sleugh has no presumptive right to access Boyd's sealed Rule 17(c) subpoena requests.

In *Kravetz*, a journalist appealed from an order denying his request to unseal documents in a criminal case. 706 F.3d at 50. The documents included a sentencing memorandum as well as Rule 17(c) subpoena materials. *Id.* at 51, 53. The journalist argued that "the sealed documents were 'judicial documents' to which he had a right of access under the First Amendment and common law." *Id.* at 52.

Applying the "experience and logic" test, the First Circuit rejected the journalist's First Amendment argument. *Id.* at 53. Under the "experience" prong, the court noted, "there is no tradition of access to criminal discovery." *Id.* at 54. "To the contrary, '[d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.'" *Id.* (quoting *United States v. Anderson,* 799 F.2d 1438, 1441 (11th Cir. 1986)) (other citation omitted).

Applying the logic prong did not support a presumptive right of access either. The court reasoned that recognizing such a right would dangerously require criminal defense counsel "to prematurely expose trial strategy to public scrutiny." *Kravetz*, 706 F.3d at 54. More broadly, public access would have a "deleterious effect . . . on the parties' search for and exchange of information in the discovery process." *Id.* (citation omitted). Accordingly, the court found "no First Amendment right of public access to the subpoenas or related materials." *Id.* at 54.

Nor did the common law right of access apply. *Id.* at 54. The court reasoned that the common law right of access ordinarily attaches to "judicial records," which "are those 'materials on which a court relies in determining the litigants' substantive rights.'" *Id.* (quoting *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9–10 (1st Cir. 2002)). Rule 17(c) materials, in contrast, "relate merely to the judge's trial management role," not the adjudication process. *Id.* at 54–55 (citations omitted).

The *Kravetz* court held, then, that "no presumptive right of public access, based either in the common law or the First Amendment, attaches to the Rule 17(c) subpoenas or the related documents filed in connection with the underlying

criminal prosecution[.]"   *Id.* at 56.   Instead, access is permitted "only upon a showing of special need."   *Id.*

We agree with *Kravetz*'s application of the First Amendment test. We also agree with *Kravetz*'s application of the common law test, which is consistent with our position on the somewhat related question of what showing must be made to seal discovery documents filed to support motions in civil cases.  For example, in *Center for Auto Safety*, the district court sealed documents attached to the plaintiffs' motion for preliminary injunction and to the defendant's opposition brief. 809 F.3d at 1095. A third party intervened, seeking to unseal the documents.  *Id.*  The district court held that the motion for preliminary injunction was a non-dispositive motion, and, therefore, the documents could be sealed merely upon a showing of "good cause." *Id.* at 1095–96.

Observing that "a motion for preliminary injunction frequently requires the court to address the merits of a case" and "often includes the presentation of substantial evidence," *Id.* at 1099 (citing *Stormans v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009)), we reversed and held that such documents should only be sealed for "compelling reasons," *Id.*  We observed how "[t]he focus in all of our cases is on whether the motion at issue is more than tangentially related to the underlying cause of action."   *Id.* at 1099.   We explained that while motions for preliminary injunctions frequently are "more than tangentially related to the merits of a case," so that documents supporting such motions should not be sealed except upon a showing of compelling reasons, "materials attached to a discovery motion unrelated to the merits of a case" need satisfy only the less exacting "good cause" standard."   *Id.* at 1097–99.   In adopting the "more than tangentially related to the merits" approach, we

cited favorably *Kravetz*'s test for determining if materials affect substantive rights, thereby triggering the common law right of access. *Id.* at 1100.

We agree with *Kravetz* that Rule 17(c) subpoenas, subpoena applications, and supporting affidavits, like civil discovery motions and supporting materials, are ordinarily only "tangentially related to the underlying cause of action." *Ctr. for Auto Safety*, 809 F.3d at 1099. To be sure, the actual evidence gathered from the issuance of Rule 17(c) subpoenas could go to the merits of a case. The materials or witnesses sought could impact the verdict at trial, the ultimate issue in any criminal case. Also, to make an assessment of the relevance of the subpoenaed materials, the court will need to take into account the merits of any potential defense theories articulated in Rule 17(c) subpoena applications. *See Nixon*, 418 U.S. at 700.

But the applications and supporting affidavits for Rule 17(c) subpoenas merely invoke the district court's authority to compel the production of evidence. They are not evidence themselves. Such affidavits might sketch out possible defense theories that may or may not find support in actual evidence. As *Kravetz* observed, "'[m]aterials submitted to a court for its consideration of a discovery motion are actually one step further removed in public concern from the trial process than the discovery materials themselves.'" *Kravetz*, 706 F.3d at 54 (quoting *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir. 1986)).

Because our law does not dictate when a party may unseal the applications and affidavits filed in support of Rule 17(c) subpoena requests, and *Kravetz* sets forth a reasonable approach that is consistent with our precedent, we adopt that approach here. *See Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017) ("As a general rule, we decline to create

a circuit split unless there is a compelling reason to do so."). As such, we hold that there is no presumption of public access under the First Amendment or common law that attaches to Rule 17(c) subpoena applications and their supporting materials. Accordingly, parties can only justify accessing sealed or in camera Rule 17(c) subpoenas, subpoena applications, and supporting documents by demonstrating a "special need." *Kravetz*, 706 F.3d at 56.

The next issue, then, is whether Sleugh showed a "special need" for Boyd's Rule 17(c) subpoena materials. We hold that he did not.

> b. *Sleugh failed to demonstrate a "special need" for Boyd's Rule 17(c) subpoena materials.*

Sleugh contends that his appellate counsel requires access to Boyd's Rule 17(c) subpoena materials to explore possible issues for his direct appeal. While appellate counsel certainly has an obligation to scour the record for appealable issues, *see Jones v. Barnes*, 463 U.S. 745, 753 (1983), this duty does not automatically create a right of access to sealed materials containing a co-defendant's defense theories.[3]

---

[3] As the magistrate judge here noted, the only case law Sleugh relies on does not support Sleugh's argument. In *Ellis v. United States*, 356 U.S. 674 (1958), the Court addressed only when leave to appeal may be denied to indigent defendants. The Court held that if defense counsel for an indigent defendant "is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account." *Id.* at 675. Then, "[i]f the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied." *Id.* Thus, *Ellis* simply reminds us of the noncontroversial expectation that counsel diligently and conscientiously investigate grounds for appeal. Nothing

Sleugh argues that he needs Boyd's Rule 17(c) applications because they could prove that Boyd lied during trial. Again, Sleugh does not identify any portion of Boyd's testimony which he believes is false (other than his statements regarding the government's promises, discussed below), and Sleugh does not explain how the attorney's affidavit detailing the relevance of the cell phone and other records sought in Boyd's Rule 17(c) subpoenas could be used to show that Boyd's trial testimony was false. Sleugh simply speculates that the assertions of counsel in Boyd's Rule 17(c) subpoena applications must be different from Boyd's trial testimony. Underlying Sleugh's conclusion is, again, the assumption that Boyd's testimony during trial was inconsistent with any defense theory that Boyd's counsel proffered in the pre-trial Rule 17(c) subpoena applications.

Sleugh assumes too much. Boyd's testimony against Sleugh—that Sleugh admitted to shooting Muzac and that Boyd was not present at the time of the shooting—were compelling defense theories for Boyd. Sleugh offers no reason for believing that Boyd's counsel would have advanced a theory inconsistent with Boyd's trial testimony in the Rule 17(c) subpoena applications. Nothing about the face of Boyd's Rule 17(c) subpoena applications suggests that the affidavits in support of those applications would be likely to undercut Boyd's testimony.[4]

---

in *Ellis* requires the production of a co-defendant's trial strategies or defense theories. Similarly, *Hardy v. United States*, 375 U.S. 277, 282 (1964), only held that appellate counsel for indigent defendants are entitled to a free copy of the entire trial transcript. This entitlement does not include a co-defendant's sealed filings.

[4] In response to Sleugh's counsel's request at oral argument, we reviewed in camera the sealed affidavits that Boyd's counsel submitted

Sleugh also argues that Boyd "lied" when he testified on redirect that the government made no promises to him in connection with his cooperation. Sleugh's contention takes Boyd's testimony out of its surrounding context. During cross-examination, Sleugh's trial counsel asked Boyd if the government "promised [Boyd] that they would bring a motion for a downward departure . . . if the government feels that you have provided substantial assistance to the government through your cooperation." Boyd answered that such a motion was "only a possibility. It's not guaranteed. It's subject to the government's discretion" and that the judge is "the only person that will be sentencing me on this case[.]" Therefore, when Boyd later testified on redirect that the government did not promise him anything, Boyd clearly was referencing the fact that any government "promises" were not guaranteed.

Regardless, Sleugh does not explain how any potentially inconsistent testimony by Boyd creates a "special need" for Boyd's Rule 17(c) subpoena applications. Even assuming the applications contain "impeachment material," as Sleugh alleges, they cannot affect this appeal because they were never in front of the jury, and we do not engage in *de novo* fact-finding on appeal. Nor could Sleugh use the statements to bring a sufficiency of the evidence challenge to his conviction, because for such a challenge, "we [only] look at

---

in support of the Rule 17(c) subpoena applications. Sleugh's position, that they contain factual assertions contradicting Boyd's trial testimony, is without merit. In situations where a reasonable and plausible basis is articulated suggesting that factual assertions attributable to a witness in a Rule 17(c) application contradict that witness's in-court testimony, a district court could also conduct such an in camera review to protect the integrity of the process.

the evidence actually presented at trial." *United States v. Sayakhom*, 186 F.3d 928, 942 n.7 (9th Cir. 1999).

Further, the Rule 17(c) subpoena applications pre-dated the plea agreement and Boyd's cooperation, and the subpoenas themselves mainly sought cell phone records and some surveillance video. Even if Boyd were caught in a lie about whether his plea agreement involved certain promises by the government, such a misstatement would not necessarily create an entitlement for Sleugh to examine the sealed affidavits proffered by Boyd's attorney to support the Rule 17(c) subpoenas for records.

We hold that Sleugh failed to present a "special need" to access Boyd's sealed Rule 17(c) subpoena applications.[5]

c. *There is a continued need to seal Boyd's Rule 17(c) subpoena materials.*

Alternatively, Sleugh argues that there is no reason to continue sealing Boyd's Rule 17(c) subpoena materials. He reasons that Boyd pleaded guilty, testified, and was sentenced and released. Therefore, according to Sleugh, revealing the Rule 17(c) subpoena applications poses no risk to Boyd.

Sleugh has a point, to an extent. There is some support for the position that these subpoena applications should not

---

[5] Because we hold that Sleugh has failed to demonstrate a "special need" for Boyd's Rule 17(c) subpoena application materials, we need not address whether Boyd's counsel waived any attorney-work product protection to those materials by filing them with the court under seal, or whether attorneys' representations as to defense theories in affidavits supporting subpoena applications could be attributable to the client for impeachment or other purposes.

be sealed forever.  Regarding transcripts of sealed trial proceedings, we require that such transcripts "must be released when the danger of prejudice has passed." *Phoenix Newspapers, Inc.*, 156 F.3d at 948 (internal quotation marks omitted).  If there is no longer any need to seal the Rule 17(c) subpoena materials at issue here, then perhaps they should be unsealed.

There are two problems with applying this rule here, though.  First, unlike the trial transcripts at issue in *Phoenix Newspapers*, which we held were entitled to a presumption of public access under the First Amendment "experience and logic" test, Rule 17(c) subpoena applications do not have a history of being available to the public; such applications do not constitute evidence, and they do not determine the merits of a criminal case.  Accordingly, it makes sense that it is harder to unseal Rule 17(c) subpoena applications than trial transcripts.

Second, in this case there is a continuing need to seal these Rule 17(c) subpoena applications.  Boyd's plea deal and sentence resolved only his federal charges, but Boyd was initially charged with murder in California state court.[6]  That charge was dismissed, but the state is not precluded from refiling that charge against Boyd.  *See Berardi v. Superior Court*, 160 Cal. App. 4th 210, 218 (2008) (observing that Cal. Penal Code § 1387 "generally provides a 'two dismissal' rule" precluding prosecutors from refiling certain charges only after the same charges have been dismissed twice already "according to the provisions of that statute").

---

[6] We grant Boyd's request for judicial notice of his state court charges.  Fed. R. Evid. 201(d); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts.").

Because there is no statute of limitations for murder in California, the specter of that charge continues to loom over Boyd. *See* Cal. Penal Code § 799(a). Also, there is a possibility that the federal government could pursue the murder charge against Boyd should he breach his plea agreement.

Unsealing Boyd's Rule 17(c) subpoena applications could reveal Boyd's defense theories to the state and federal governments for any future trial. The prospect of undermining the confidentiality of Boyd's defense strategies justified sealing these materials in the first place, which Sleugh does not contest. It is no different now.[7]

IV. CONCLUSION

For these reasons, we **AFFIRM** the district court's affirmance of the magistrate judge's order denying Sleugh's motion to unseal Boyd's Rule 17(c) subpoena applications.

---

[7] This is not to say that all Rule 17(c) subpoena applications may or should remain under seal forever. There may be instances when there is no longer any need to protect a defendant's theories of defense (*e.g.*, upon the defendant's death, or when the statute of limitations has run on all charges). Boyd's situation is unique because, as long as he lives, he will always face the risk of another state murder charge. Accordingly, we need not resolve whether all Rule 17(c) subpoena applications should remain under seal in perpetuity.