**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ROXANNE MARIE CARPENTER,
*Defendant-Appellant.*

No. 17-10498

D.C. No.
4:17-cr-00602-
CKJ-EJM-1

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

FAUSTO VELAZQUEZ,
*Defendant-Appellant.*

No. 18-10006

D.C. No.
4:17-cr-00602-
CKJ-EJM-4

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted April 15, 2019
San Francisco, California

Filed May 9, 2019

Before:  MICHAEL D. HAWKINS and MILAN D.
SMITH, JR., Circuit Judges, and KATHRYN H.
VRATIL,* District Judge.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY**

### Criminal Law

The panel affirmed rulings by the district court in a case in which Roxanne Carpenter and Fausto Velasquez were jointly tried and convicted of conspiracy to kidnap and kidnapping.

The panel held that the common law right of access attaches to pre-trial offers of proof for a duress defense, and that because Carpenter failed to provide a compelling reason to overcome this presumptive right of access, the district court did not abuse its discretion in denying Carpenter's motion to seal her proffer.

The panel held that the district court did not abuse its discretion in permitting the government to present under Fed. R. Evid. 404(b) evidence of trafficking of marijuana to Carpenter's house and the subsequent disappearance of the marijuana, which was necessary to provide a coherent and

---

* The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

comprehensible story regarding the background for Gonzalez's kidnapping.

The panel held that evidence of Carpenter's, Velazquez's, and their codefendants' use of methamphetamine at a friend's home during the kidnapping was not inextricably intertwined with the charged crimes so as to escape the bounds of Rule 404(b), and that the district court abused its discretion in admitting the evidence, which should have been excluded under Fed. R. Evid. 403's balancing of probative value and prejudice. The panel concluded that this error was harmless.

The panel addressed other claims in a concurrently filed memorandum disposition.

## COUNSEL

S. Jonathan Young (argued), Law Offices of Williamson & Young P.C., Tucson, Arizona, for Defendant-Appellant Roxanne Carpenter.

Joshua F. Hamilton (argued) and Carol L. Lamoureux, Law Offices of Hernandez & Hamilton PC, Tucson, Arizona, for Defendant-Appellant Fausto Velazquez.

Erica Anderson McCallum (argued), Assistant United States Attorney; Robert L, Miskell, Appellate Chief; Elizabeth A. Strange, First Assistant United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

## OPINION

M. SMITH, Circuit Judge:

In March 2017, Roxanne Carpenter, Fausto Velazquez, Phoeilx Begay, and Brian Meyers (together, codefendants) kidnapped Angel Gonzalez—who was suspected of stealing marijuana from a Mexican cartel—to turn him over to the cartel in exchange for thirty pounds of marijuana. After a five-day trial, a jury convicted Carpenter and Velazquez of conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a)(1) and (c), and kidnapping, in violation of 18 U.S.C. § 1201(a)(1). Carpenter and Velazquez appeal a series of the district court's rulings pertaining to their joint trial.[1] We affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In early 2017, Gonzalez, who worked for a member of the Mexican cartel, and Velazquez, transported twelve 88-pound bundles of marijuana from Hereford, Arizona to Carpenter's home. At some point, a portion of the marijuana disappeared from Carpenter's home. The cartel suspected that Gonzalez was responsible for the missing marijuana, and word of there being a bounty on his head spread through the community. Armed cartel members went to Carpenter's home, looking for the missing drugs and Gonzalez. Two days later, the police went to her house and asked questions about the cartel members who had recently visited the house.

In March 2017, Begay informed Carpenter that he could no longer hold off the cartel, and that the cartel was going to

---

[1] We consider only two claims raised by Carpenter and Velazquez in this opinion. A concurrently filed memorandum disposition addresses their remaining claims.

make Velazquez pay for the missing marijuana. Meyers testified at trial that he believed that the codefendants planned to kidnap Gonzalez to turn him over to the cartel to protect their "family." Velazquez negotiated with the cartel, arriving at a final price of thirty pounds of marijuana in exchange for Gonzalez.

On March 29, 2017, Meyers borrowed Carpenter's vehicle, first picking up Gonzalez from his apartment, then Begay from his home, under the pretense that they were taking Gonzalez to Elfrida, Arizona so that he could detox from drugs. On the way, Meyers changed the plans and they drove instead towards Douglas, Arizona to obtain methamphetamine. Gonzalez testified that after he fell asleep, he felt a taser[2] on his neck. Begay and Meyers then handcuffed him, shackled his legs, duct-taped his hands, feet, and face, and shoved him into the car's trunk.

Begay and Meyers drove to a Safeway outside Bisbee, Arizona to meet Carpenter and Velazquez. While Meyers kept watch in the car, Carpenter, Velazquez, and Begay entered the store, where Carpenter bought water, candy, and duct tape. Carpenter decided that the group needed to leave the Safeway parking lot, and they drove to the home of her friend, Keri Hall. At Hall's house, the codefendants waited to hear from the cartel, and smoked methamphetamine. Meanwhile, Gonzalez remained bound in the trunk. When the codefendants learned that the cartel members could no longer meet them on the American side of the border, Carpenter volunteered to take Gonzalez to Mexico. She drove him, still in the trunk, through the Naco, Arizona port of entry. Just across the border, Gonzalez found the trunk latch, opened the trunk, yelled for help, and managed to exit

---

[2] The actual weapon used was a cattle prod.

the trunk.  Carpenter accelerated away, ditched her car, and then attempted to reenter the United States on foot.

At the border, federal agents arrested Carpenter on kidnapping-related charges.  A two-count indictment was later filed charging all four codefendants—Carpenter, Velazquez, Begay, and Meyers—with conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a)(1) and (c), and kidnapping, in violation of 18 U.S.C. § 1201(a)(1).

Meyers and Begay pleaded guilty, while Carpenter and Velazquez proceeded to trial.  Prior to trial, Carpenter submitted an offer of proof of her duress defense, and the district court concluded that she could present the defense. After a five-day trial, the jury found Carpenter and Velazquez guilty of both charges.  Carpenter received a sentence of two concurrent terms of 168 months' imprisonment.  Velazquez was sentenced to two concurrent terms of 140 months' imprisonment.  Carpenter and Velazquez timely appealed, and their appeals were consolidated before us.

## JURISDICTION

The district court had jurisdiction over the criminal cases pursuant to 18 U.S.C. § 3231, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## ANALYSIS

We consider first Carpenter's claim that the district court abused its discretion in denying her motion to seal her duress defense proffer, and then Velazquez's claim that the district court abused its discretion in admitting other act evidence against him.

## I.  Pre-Trial Offer of Proof for Duress Defense

The Ninth Circuit requires defendants to make "a prima facie showing of duress in a pre-trial offer of proof" to be able to present this defense[3] at trial.  *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008). "Absent such a prima facie case, evidence of duress is not relevant." *Id.*

In accordance with *Vasquez-Landaver*, before trial, Carpenter sought to submit an offer of proof of her duress defense.  She initially moved ex parte to seal her offer of proof, but the district court denied the motion, finding that it would be "improper and unfair" to decide the substantive issue without input from the government and that the contained information was not "historically kept confidential."  Carpenter subsequently filed the offer of proof publicly.  At the hearing on whether to permit Carpenter's duress defense at trial, the government noted that it had not read the duress proffer.  Ultimately, the court allowed the duress defense, finding that Carpenter had offered sufficient evidence to support it.  At trial, Carpenter presented a duress defense, and the court instructed the jury on the defense.

On appeal, Carpenter argues that the court erred in ordering public disclosure of the pre-trial offer of proof.  Our case law regarding pre-trial offers of proof for a duress

---

[3] A defendant must establish three elements to present a duress defense: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm."  *United States v. Moreno*, 102 F.3d 994, 997 (9th Cir. 1996).

defense is in short supply.**4**  We write to clarify how district courts should contend with these pre-trial offers of proof.

"We review de novo whether the public has a right of access to the judicial record of court proceedings under the First Amendment, the common law, or [the Federal Rules of Criminal Procedure], because these are questions of law." *United States v. Doe*, 870 F.3d 991, 996 (9th Cir. 2017) (alteration in original) (quoting *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1081 (9th Cir. 2014)). Because the district court balanced the "interests of the public and the party seeking to keep secret certain judicial records," however, we review the court's decision not to seal or proceed ex parte with Carpenter's offer of proof for abuse of discretion.  *Id.*

### A.  Right of Access

The right of access to criminal trials is generally protected by both the First Amendment and the common law.  *See United States v. Sleugh*, 896 F.3d 1007, 1013 (9th Cir. 2018).  However, this right is not unlimited.  *See, e.g.*, *Times Mirror Co. v. United States*, 873 F.2d 1210, 1215 (9th Cir. 1989) (holding no First Amendment right of access to

---

**4** Perhaps due in part to this lack of guidance, district courts within our circuit have split on whether to permit sealed offers of proof for the duress defense.  *Compare United States v. Burgueno-Gonzalez*, No. 17CR0245-LAB, 2017 WL 1540863, at *1 (S.D. Cal. Apr. 28, 2017) (denying ex parte under seal motion for duress offer of proof where defendant failed to make a showing of its necessity in light of competing interests); *with United States v. Murillo*, No. ED CR 05-69 (B) VAP, 2008 WL 11411629, at *24 (C.D. Cal. May 23, 2008) (overruling government's objection to defendant's in camera and sealed proffer for affirmative defenses because disclosure would require the defendant to choose between his Fifth and Sixth Amendment rights).

search warrant proceedings and materials while pre-indictment investigation is ongoing).

The Supreme Court instructed that courts consider (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question," when determining whether there is a First Amendment right of access to criminal proceedings. *Press-Enterprise Co. v. Super. Court of Cal. for Riverside County*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*). If the proceeding passes this "experience and logic" test, *Id.* at 9, a qualified First Amendment right of access attaches. The Court has recognized a First Amendment right of access to criminal trials, *Globe Newspaper Co. v. Super. Ct. for Norfolk County*, 457 U.S. 596, 604–05 (1982); jury voir dire, *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*Press-Enterprise I*); and preliminary hearings before a judicial officer as conducted in California, *Press-Enterprise II*, 478 U.S. at 13. This right can only be overcome by an "overriding interest . . . that closure . . . is narrowly tailored to serve that interest." *Sleugh*, 896 F.3d at 1013 (quoting *Phoenix Newspapers, Inc. v. U.S. Dist. Court*, 156 F.3d 940, 946 (9th Cir. 1998)).

A separate, common law right to "inspect and copy public records and documents, including judicial records and documents" also exists. *Doe*, 870 F.3d at 996–97 (quoting *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1192 (9th Cir. 2011)). This right, however, does not apply to documents that "have traditionally been kept secret for important public policy reasons." *Times Mirror*, 873 F.2d at 1219. Where a presumptive right of

access under the common law arises, that presumption can be overcome only by a showing of a "compelling reason." *Sleugh*, 896 F.3d at 1013.

While we held pre-*Press-Enterprise I* and *II* that there is "a [F]irst [A]mendment right of access to pretrial documents in general," *Associated Press v. U.S. Dist. Court for Cent. Dist. of Cal.*, 705 F.2d 1143, 1145 (9th Cir. 1983), we have not decided specifically whether the public has a First Amendment or common law right of access to pre-trial duress offers of proof.

Even though we have long required that defendants proffer evidence of their duress defense, we have never held—nor indicated—that these proffers are entitled to secrecy or additional confidentiality. Instead, our early cases demonstrate that courts often dealt with the threshold inquiry of the prima facie showing through unsealed motions in limine. *See, e.g.*, *United States v. Contento-Pachon*, 723 F.2d 691, 693–95 (9th Cir. 1984); *United States v. Shapiro*, 669 F.2d 593, 596–97 (9th Cir. 1982). Open court offers of proof were also utilized. *See United States v. Gordon*, 526 F.2d 406, 408 (9th Cir. 1975).[5] Thus, we conclude that proffers for the duress defense have not "traditionally been kept secret," *Times Mirror*, 873 F.2d at 1219, and the common law right of access attaches.

We acknowledge the tension that may arise between the public's right of access and the defendant's right to a fair trial. Such concerns are not without a place in this inquiry,

---

[5] We also note that similar affirmative defenses have received analogous treatment. *See, e.g.*, *United States v. Dorrell*, 758 F.2d 427, 430–31 (9th Cir. 1985) (necessity defense proffer considered through unsealed motion in limine).

and even the stronger First Amendment right of access "may give way in certain cases to other rights or interests." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). The common law right too has "bowed," so as to, for example, ensure that the court's records are not "used to gratify private spite or promote public scandal." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (quoting *In re Caswell*, 29 A. 259, 259 (R.I. 1893)). Courts repeatedly navigate this delicate balance when grappling with whether certain criminal proceedings or documents are afforded the presumption of openness. Unsurprisingly then, this balance of the interests is a "discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599. Accordingly, we next consider whether the district court abused its discretion in denying Carpenter's ex parte motion to seal her pre-trial offer of proof.

## B. Carpenter's Offer of Proof

Where there is a presumptive right of access under the common law, that presumption can be overcome only by showing a "compelling reason." *Sleugh*, 896 F.3d at 1013. A court may seal records "only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (alteration in original) (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

Carpenter laments being forced to have "preview[ed] all of the evidence and all of her own testimony supporting her duress defense," and argues that the public disclosure was unconstitutional. The district court considered Carpenter's concerns that the disclosure of her evidence to the government would be unfair and would conflict with the ethical rules that counsel against revealing information

related to the representation of client, and found that she had not stated a compelling reason to seal the proffer. We agree with the district court.

Carpenter asserts only general principles as to why her proffer should remain sealed, but the fundamental starting point is that the proffer is entitled to a "strong presumption in favor of access." *Kamakana*, 447 F.3d at 1178. Carpenter remains unable to identify any direct way in which prejudice occurred in her case, other than to assert that the government's witnesses and attorneys were able to learn in advance what she would say, and could, as a result, bolster their own testimony. Her speculative arguments as to the prejudice she suffered because the court did not seal the proffer are unmoored from the facts of the case, and she conceded at oral argument that she has no evidence to suggest that anyone read the proffer and could have cross examined witnesses on this point—yet did not. Carpenter's arguments are insufficient to overcome the presumption of access.

In *United States v. Gurolla*, on which Carpenter relies for the proposition that public disclosure of her proffer was unconstitutional, we held that the government was not entitled to review the defendant's sealed declarations regarding his entrapment defense on appeal, when it had not challenged the district court's seal order below. 333 F.3d 944, 952–53 (9th Cir. 2003). The *Gurolla* court noted, however, that establishing a rule that requires defendants to disclose the substance of their testimony to the prosecution for an entrapment defense might be unconstitutional because it forced them to choose between their Fifth and Sixth Amendment rights, though it explicitly chose not to wade into that potential quagmire. *Id.* at 953 n.11.

Carpenter's reliance is misplaced, and contrary to her contentions, our conclusion today does not establish a compulsory rule that defendants must disclose their testimony to present a duress defense. The public's common law right of access to these offers of proof is a qualified right—one that a defendant can overcome by making the requisite showing. As we noted, in the balancing test the district court is required to consider the competing rights of the defendant and the public. We hold today only that the common law right of access attaches to pre-trial offers of proof for a duress defense, and that because Carpenter failed to provide a compelling reason to overcome this presumptive right of access, the district court did not abuse its discretion in denying Carpenter's motion to seal her proffer.[6]

## II. Other Act Evidence

Before trial, the government moved in limine to include "other act" evidence of (1) the February 2017 trafficking of marijuana to Carpenter's house and the subsequent marijuana disappearance, and (2) the codefendants' use of methamphetamine at Hall's home during the kidnapping. The court granted the government's motions, finding the evidence admissible "under the theory of allowing the Government to complete the story or explain to the jury the background facts surrounding this incident," and that the probative value outweighed the unfair prejudice. Velazquez argues that the district court erred in admitting this evidence.

---

[6] Since we determine that, at a minimum, the common law right of access applies, and that the district court did not abuse its discretion in holding that Carpenter failed to meet the lower burden to overcome that right, we need not reach the question of whether there is also a qualified First Amendment right to proffers of duress evidence.

We review de novo whether evidence is other act evidence within the meaning of Federal Rule of Civil Procedure 404(b), but the admission of this evidence for abuse of discretion. *United States v. Hill*, 953 F.2d 452, 455 (9th Cir. 1991). Where a district court errs in admitting other act evidence, we review for harmless error. *See id.* at 458.

Other act evidence is inadmissible to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Even if other act evidence is admissible, it remains subject to the general balancing test concerning whether its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

We have exempted other act evidence from the requirements of Rule 404 where it is "inextricably intertwined" with the underlying offense. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). The first exempted category consists of evidence that "constitutes a part of the transaction that serves as a basis for the criminal charge." *Id.* Second, as relevant here, other act evidence is admissible when "necessary . . . in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* at 1012–13.

Velazquez argues that neither the circumstances surrounding the February 2017 drug-trafficking incident nor the use of methamphetamine at Hall's house was inextricably intertwined with the charged offenses. We consider each in turn.

### A.  Missing Marijuana

Velazquez concedes that the missing marijuana was "relevant to give context" as to the bounty on Gonzalez's head, to the "the issue of motive," and to "provide context for Carpenter's duress claim."  Nonetheless, he contends that the "question of how the marijuana went missing or who was responsible for it . . . was completely irrelevant to the charges," and the "repeated references" to Velazquez's drug-trafficking activity and the suggestions that he stole the marijuana prejudiced the jury against him.

As Velazquez admits, the circumstances of the initial drug-trafficking incident and missing marijuana were necessary to provide a "coherent and comprehensible story" regarding the background for the kidnapping of Gonzalez. His attempt to finely slice this other act evidence is unpersuasive.  The speculative testimony at trial regarding who stole the missing marijuana, only underscored the general confusion prior to the kidnapping as to the perpetrator and offered context to the jury as to how the cartel, and therefore the codefendants, focused on Gonzalez. In addition, as the district court found, this evidence also attacked the immediate threat element of the duress defense by showing that the codefendants struggled with the missing marijuana dilemma for over one month before kidnapping Gonzalez.  In short, the district court did not abuse its discretion in permitting the government to present evidence regarding the disappeared marijuana and its immediate aftermath.

### B.  Methamphetamine Use

The district court determined that the codefendants' use of methamphetamine while they waited at Hall's home was also admissible to offer a coherent story.  But, other act

evidence must have a "sufficient contextual or substantive connection" to the charged offense and we find that the codefendants' methamphetamine use did not. *Vizcarra-Martinez*, 66 F.3d at 1013.

Similarly to our finding in *Vizcarra-Martinez* that the defendant's possession of a small amount of methamphetamine at the time of his arrest was "unquestionably" not part of the offense with which he was charged—possession of hydriodic acid, *id*., Velazquez's use of methamphetamine was not part of either charged offense. Although Velazquez's methamphetamine use while at Hall's house tends to slightly rebut the duress defense,[7] "[c]oincidence in time is insufficient." *Id*. In *Vizcarra-Martinez*, we also found that the prosecution's ability to present evidence relevant to the crime without introducing the defendant's personal methamphetamine favored excluding the evidence. *Id*. Here too, the government presented additional evidence that attacked Carpenter and Velazquez's duress defense during this exact same period. Hall testified that Carpenter "kind of laughed" in response to Hall telling her that she could get in trouble for having a person in the trunk of her car, and that Carpenter generally was acting "normal." In addition, according to Hall, Velazquez was "singing or rapping while he was sitting on the couch." Velazquez's use of methamphetamine while he waited at Hall's house was in no way relevant to the commission of the crimes. Therefore, we conclude that this

---

[7] Contrary to the government's theory, the codefendants may possibly have used methamphetamine to cope with the stress of the kidnapping. For example, Carpenter testified that smoking methamphetamine "slows [her] down. It just does a focus thing."

evidence was not inextricably intertwined with the crimes so as to escape the bounds of Rule 404(b).

Because we conclude that the methamphetamine use constituted other act evidence, we next consider whether it should have been excluded under Rule 404(b). We use a four-part test to determine the admissibility of evidence under Rule 404(b):

> Evidence of prior criminal conduct may be admitted if: (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) [in certain cases] the act is similar to the offense charged.

*Id.* at 1013 (quoting *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994)). The government argues that the challenged evidence was admissible under Rule 404(b)(2) because it addressed "motive, state of mind, and absence of duress."

We seriously doubt that Velazquez's methamphetamine use speaks to his motive to commit kidnapping or conspiracy to kidnap, although we find that the evidence is probative of his state of mind and the absence of duress. Nonetheless, we conclude that the district court abused its discretion in admitting the evidence because it should have been excluded under Rule 403's balancing. Drug use "is highly prejudicial," and the connection between the charged offenses and the methamphetamine use was evidently slight. *Id.* at 1017. The low probative value of the methamphetamine use—particularly in light of the other evidence that the government introduced to establish the absence of duress and the codefendants' state of mind—is

"substantially outweighed" by its prejudice.     Fed. R.
Evid. 403.

Finally, finding that the evidence is inadmissible under
Rule 403, we must determine whether the district court's
admission of the methamphetamine use was harmless.  We
start with a "presumption of prejudice," *United States v.
Bailey*, 696 F.3d 794, 803 (9th Cir. 2012) (quoting *Obrey v.
Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)), and we reverse
unless "it is more probable than not that the error did not
materially affect the verdict," *United States v. Morales*,
108 F.3d 1031, 1040 (9th Cir. 1997) (en banc).

The government presented more than enough evidence
to defeat Velazquez's duress defense and overwhelming
evidence as to his guilt for both conspiracy to kidnap and
kidnapping.  Velazquez—the only Spanish speaker among
the codefendants—negotiated with the cartel to set the award
for Gonzalez.  On the day of the kidnapping, he continued to
communicate with the cartel to arrange the exchange
location.  Velazquez entered Safeway with Carpenter to buy
additional kidnapping supplies, and he sat at Hall's house
"singing and rapping" while Gonzalez remained bound in
the trunk.   Carpenter, Gonzalez, Hall, and Meyers, all
implicated Velazquez in the planning and/or commission of
the crimes.  Considering the mountain of evidence against
Velazquez,  we  conclude  that  the  references  to  his
methamphetamine use at Hall's house, while prejudicial,
were harmless.  *Cf. Bailey*, 696 F.3d at 805 (improperly
admitted evidence that defendant had previously committed
a crime was not harmless where prosecution's case turned
on witness with credibility issues and "considerable
evidence" supported defendant's defense).

## CONCLUSION

We hold that the district court did not abuse its discretion in requiring Carpenter to publicly file her pretrial offer of proof, and that while the court erred in admitting evidence of Velazquez's methamphetamine use, the error was harmless.

**AFFIRMED.**